NUMBER 13-06-235-CV



COURT OF APPEALS
 


THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


WILLIAM COALE AND JULIE COALE, Appellants,


v.


RONALD SCOTT, HAZEL SCOTT, 

JACQUELINE SCOTT, JUDY SAUR, 

SHEA SAUER, AND HEATHER SAUR, Appellees.

 


On appeal from the 274th District Court 


of Comal County, Texas.

 

 

MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Garza
 

 Ronald Scott, Hazel Scott, Jacqueline Scott, Judy Saur, Shea Saur, and Heather
Saur sued William and Julie Coale for a declaratory judgment and to enjoin them from
placing improvements on a 3.629-acre tract of land, an abandoned airstrip, owned by
the Coales in fee simple. The Coales's deed reserved a right of ingress and egress for
adjoining landowners. The Coales filed a counterclaim seeking to enjoin the Scotts and
Saurs from interfering with the use of their property, so long as they allowed access
to a gravel or dirt trail running down the middle of the 100 foot-wide tract. Following
a jury trial, the trial court entered judgment in favor of the Scotts and the Saurs. We
affirm the judgment of the trial court.

I. Background


 On January 15, 2004, the property in question was conveyed to the Coales by
L. Charles Billings and Peggy Gail Billings, grantors, in a quitclaim deed. The relevant
part of the deed reads:

 Property: that certain tract of land conveyed to Grantors . . . in a
Quitclaim Deed, dated September 29, 1983 . . . and being that certain
roadway situated and located in, over and across that certain 173.45
acre tract conveyed . . . by Deed dated January 24, 1967 . . .and being
a party of the Maria Ampora Survey No. 3, in Comal County, Texas
including Valley View Drive and the 100 foot airstrip, being
approximately 3.6290 acres, more or less.


 Reservations from and Exceptions to Conveyance: This roadway is
subject to the right of ingress and egress on the part of all landowners in
the above described 173.45 acres [sic] tract. 


 That "certain roadway" referenced in the deed includes a 3.629-acre tract that
runs through a 173.45-acre tract of land owned by multiple landowners. The
3.629-acre tract is an abandoned airstrip that is 100 feet wide. For ease of reference,
we will call this portion of the tract the airstrip. It is the use of the airstrip that is
central to this dispute. 

 At the time of the conveyance, the Scotts and the Saurs owned tracts bordering
the south side of the airstrip, and the Saurs owned a tract bordering the east side of
what was formerly known as Valley View Drive, northeast of the airstrip. After the
Coales purchased the property, they began preparations to place two trailer homes on
the north side of the trail that runs down the middle of the airstrip. They also installed
a storage unit (on the south side of the trail across from the Saurs's property), fencing,
a ranch gate, and a septic system. The trailer homes were placed directly across the
trail from the Scott's property. The Coales planned to move their parents into the
trailer homes. The Coales contend "neither of these structures prevented the Scotts
or Judy Saur from using the old trail that they and others before them had always used
to get to their properties." 

 The case was submitted to the jury by the following special issue:


 Find from a preponderance of the evidence the (a) WIDTH
in number of feet, and (b) the geographical location of a
passageway allowing passage across the land owned by
defendants, William and Julie Coale, which is reasonably
necessary to give the owners of the adjoining properties
access for ingress and egress to their properties.


 You are further instructed in connection with the foregoing
Special Issue that the right of ingress and egress reserved
in Defendants' deed implies a granted [sic] of unlimited
reasonable use such as is reasonable necessary and
convenient, and as little burdensome as possible to the
owner in fee of the land.


 You are further instructed in connection with the foregoing
special issue that the right of ingress and egress reserved in
a deed granting adjoining property owners the right to pass
through the lands owned in fee by another person does not
include the right to linger for recreation or for use of the
land for all purposes or other privileges of ownership.


 (a) Width in number of feet:


 Answer: 100'


 (b) Geographical location of the passageway:


 Answer: N/A


 The jury found in favor of the Scotts and the Saurs by deciding that they had
the right to use the entire 100 foot-wide tract for ingress and egress to their adjoining
properties. The trial court entered judgment on the jury's findings and awarded costs. 
Specifically, the trial court's Judgment Nunc Pro Tunc orders that the "Plaintiffs have
a right of ingress and egress 100 feet in width over and across Defendants' property
containing approximately 3.629 acres." The jury's findings were incorporated into the
judgment by reference. All other relief requested was denied. 

 The Coales challenge the judgment of the trial court in ten issues. However, the
manner in which they assert their issues is vague and confusing. They fail to clearly
state the error they are claiming and fail to provide the applicable standard of review. 
In the interest of justice, we will construe the Coales' brief as a challenge to the legal
and factual sufficiency of the evidence. 

 As best we can ascertain, the Coales complain that the trial court erred by
entering judgment declaring that the Scotts and the Saurs are entitled to a way of
ingress and egress across the airstrip. They argue that: (1) the Scotts and the Saurs
are only entitled to a way across the Coales' property that is reasonable and necessary
for them to have passage to and from their property and imposes the least burden on
the Coales' property, the servient estate; (2) the right of ingress and egress is limited
to the established trail or roadway down the center of the airstrip; (3) the right of
ingress and egress does not include recreational or other personal privileges; (4) the
Scotts and the Saurs cannot enhance or expand their rights beyond a reasonable way
for ingress and egress; and (5) the Scotts and the Saurs have direct access to their
property over their own property or by way of an adjacent roadway and are not
entitled to have access for ingress and egress over the Coales' property.

II. Standard of Review


 In reviewing a legal sufficiency challenge, we determine whether the evidence
as a whole rises to a level that would enable reasonable and fair-minded people to
differ in their conclusions. City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.
2005). Anything more than a scintilla of evidence is legally sufficient to support the
finding. Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla
of evidence exists if the evidence furnishes some reasonable basis for differing
conclusions by reasonable minds about the existence of a vital fact. Rocor Int'l, Inc.
v. Nat'l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).

 We view the evidence in the light favorable to the verdict, crediting favorable
evidence if reasonable jurors could, and disregarding contrary evidence unless
reasonable jurors could not. City of Keller, 168 S.W.3d at 827. Evidence is legally
insufficient when the record discloses: (1) a complete absence of evidence of a vital
fact; (2) the court is barred by rules of law from giving weight to the only evidence
offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more
than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital
fact. Id. at 810.

 In reviewing a factual sufficiency challenge, we consider and weigh all of the
evidence in support of and contrary to the finding, and will set aside a finding only if
it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). In making
this review, we do not substitute our judgment for that of the jury, even if a different
answer could be reached on the evidence. See City of Keller, 168 S.W.3d at 821. 
It is well established that jurors are the sole judges of the credibility of the witnesses
and the weight to give their testimony. Id. at 819. Therefore, a jury confronted with
conflicting evidence may choose to believe one witness and disbelieve others; it may
resolve inconsistencies in the testimony of any witness, or it may accept lay testimony
over that of experts. Id.

III. The Express Easement 


 The terms ingress and egress indicate rights inherent in the owners of the
dominant estate to pass through the servient estate. Coleman v. Forister, 514 S.W.2d
899, 903 (Tex. 1974). They do not imply the right to linger for recreational purposes. 
Id. The owners of the dominant estate are entitled to the rights granted by the
instrument, and no more. Id. A grant or reservation of an easement in general terms
implies a grant of unlimited reasonable use such as is reasonably necessary and
convenient and as little burdensome as possible to the servient owner. Id.; Dail v.
Couch, 99 S.W.3d 390, 391 (Tex. App.-Corpus Christi 2003, no pet.).

 "The scope of an express easement is determined by the same rules which are
applicable to deeds and other written instruments." Adams v. Norsworthy Ranch, 975
S.W.2d 424, 427 (Tex. App.-Austin 1998, no pet.) (quoting Wall v. Lower Colorado
River Auth., 536 S.W.2d 688, 691 (Tex. Civ. App.-Austin 1976, writ ref'd n.r.e.)). 
Unless cause exists for going outside the language of the express easement or there
is a finding that such language is ambiguous, we rely on that document alone. See
Coleman, 514 S.W.2d at 903. In the case of an unambiguous writing, courts will
give effect to the intention of the parties as expressed by or as apparent from the
writing. See Wall, 536 S.W.2d at 691. 

 Here, the grant expressly provides: "This roadway is subject to the right of
ingress and egress on the part of all landowners in the above described 173.45 acres
tract." No mention is made of any other rights of use, and none may be implied.
Coleman, 514 S.W.2d at 903. The Coales do not raise ambiguity as an issue and we
see no cause for going outside the clear language of the express grant. Id.

 There is no dispute that the 3.629 acre tract is 100 feet wide. The dispute
centers around what the Coales believe the Scotts and the Saurs actually use and need
to use for their rights of ingress and egress. In other words, the parties disagree on
what is reasonably necessary and convenient and as little burdensome as possible to
the Coales. See id.; Dail, 99 S.W.3d at 391. 

IV. Whether 100 Feet Is Reasonable and Necessary


 The Coales argue the Scotts and the Saurs are only entitled to a way across the
Coales' property that is reasonable and necessary for them to have passage to and
from their property and imposes the least burden on the Coales' property, the servient
estate. Specifically, the Coales contend all the Scotts and the Saurs use and need to
use is the dirt or gravel road that runs down the middle of the airstrip. In support of
this argument, they claim there is no evidence to support the finding that the Scotts
and the Saurs are entitled to a way of ingress and egress across the 100 foot-wide
tract. Further, they contend the overwhelming preponderance of the evidence shows
that the right of ingress and egress should be limited to the established trail or
roadway down the center of the 100 foot wide tract.

 The Scotts and the Saurs are entitled to the rights granted by the instrument,
and no more. Coleman, 514 S.W.2d at 903. A grant or reservation of an easement in
general terms implies a grant of unlimited reasonable use such as is reasonably
necessary and convenient and as little burdensome as possible to the servient owner. 
Id. There is nothing in the trial court's judgment to indicate that the Scotts and the
Saurs were given anything more than the rights recognized by law. In fact, the first
instruction to the jury, which is incorporated into the judgment, specifically tracks this
language. Further, in Special Issue 1, the jury was asked to determine the passageway
which is "reasonably necessary." What is reasonable access under a deed is a fact
issue to be determined by a jury. Forister v. Coleman, 538 S.W.2d 14, 16 (Tex. Civ.
App.-Austin 1976, writ ref'd n.r.e.). 

 The jury considered the language in the deed, a survey depicting the properties,
the legal description of the properties in the tax records, photographs, and testimony. 
We have already determined that the deed is not ambiguous. It is clear that the deed
granted use of the airstrip for ingress and egress. The question is whether the
evidence supports use of the entire width of the airstrip for ingress and egress.

 Ron Scott (Ron) lives directly across the airstrip from the Coales. He has owned
his property since 1981. Prior to the time the Coales purchased their property, Ron
maintained the airstrip by cutting trees, cleaning, and putting gravel on the road. The
previous owner did not object to this activity. For twenty years, Ron turned into his
property from any point on the airstrip. There were no gates or fences. The trailers
that the Coales have placed on the airstrip impede Ron's access to his property. At
one time, Ron drove an 18-wheeler. Ron testified that if he were to try to drive down
the airstrip now in an 18-wheeler, he would drive within approximately five feet of the
Coales' trailers and possibly drive over their plumbing lines.

 Ron used a garbage service for about nine years. The garbage truck would go
up the hill, use the airstrip to pick up the garbage, turn around, and go back down the
hill. The garbage truck stopped coming after Coale told the garbage service that it
could not use the airstrip. 

 Judy Saur testified that parts of the airstrip would get "washed away" when it
rained. Photographs depicting the muddy airstrip indicated it may be necessary to use
the entire width of the airstrip to safely navigate mud holes and areas where the road
had washed out. She also testified to using the entire width of the airstrip to bring the
trailer she currently lives in on to her property. If she were to attempt the same thing
today, she would have difficulty getting through the area because of the trailers and
the septic system.

 Hazel Scott testified that the trailers are an impediment because "you can only
go one way. And if you want to pass two ways, you can forget it." Previously, cars
going in the opposite direction could travel simultaneously by using the entire width
of the airstrip. Now, one has to pull over to let the other one pass.

 Based on the foregoing, there is legally sufficient evidence to support the jury's
finding that use of the entire 100 feet of the airstrip is reasonably necessary for the
Scotts' and the Saurs' right of ingress and egress. Further, we disagree that the
overwhelming preponderance of the evidence shows that the right of ingress and
egress should be limited to the established trail or roadway down the center of the 100
foot wide tract. Accordingly, the evidence is factually sufficient. Additionally, the
Coales did not demonstrate that use of the of entire 100 foot- wide tract by the
Scotts and the Saurs was burdensome to them.

V. Whether Alternate Access Defeats Right of Ingress and Egress

 The Coales argue that the Scotts and the Saurs have direct access to their
property over their own property, or by way of an adjacent roadway, and are not
entitled to access for ingress and egress over the Coales' property. Here, the Coales
cite to Sentell v. Williamson County, 801 S.W.2d 220, 223 (Tex. App.-Austin 1990,
no writ), and Adams v. Norsworthy Ranch, Ltd., 975 S.W.2d 424, 427 (Tex.
App.-Austin 1998, no writ), and refer to limited testimony in the record to support
their claim that the Scotts and the Saurs have alternate routes available. The Coales'
reliance on Sentell and Adams is misplaced. Sentell involves an express easement that
contained a condition that the easement would terminate if the grantee should ever
obtain a better and more direct route so as to have a means of ingress to and egress
from its property. Sentell, 801 S.W.2d at 222. No such condition exists in the Coale
grant. Adams deals with an express easement that provided for the "most necessary
and convenient" "route or routes" to the grantee. Adams, 975 S.W.2d at 428. The
grantee claimed an additional grant by implication. Id. at 429. Neither of these cases
apply to the facts of this case. 

 Moreover, we conclude this issue is inadequately briefed. In accordance with
Rule 38.1(h) of the Texas Rules of Appellate Procedure, we will only consider
contentions that are supported by clear and concise arguments with appropriate
citations to authorities and to the record. Tex. R. App. P. 38.1(h). Because this issue
is inadequately briefed, we overrule this issue.

VI. Whether Right of Ingress and Egress Includes Recreational Activity


 The Coales argue the right of ingress and egress does not include recreational
or other personal privileges, and the Scotts and the Saurs cannot enhance or expand
their rights beyond a reasonable way for ingress and egress. Once again, the trial
court's judgment incorporated the instruction that was given to the jury which
excluded the right to linger for recreation or for use of the land for all purposes or other
privileges of ownership. Accordingly, the Coales' argument is inapplicable here
because there has been no expansion of the grant beyond that stated. Grimes v.
Corpus Christi Transmission Co., 829 S.W.2d 335, 337 (Tex. App.-Corpus Christi
1992, writ denied) (op. on reh'g). Further, the Scotts and the Saurs acknowledge in
their appellate brief that "there is no right to engage in recreational activities." At trial,
Ron testified he understood the right of ingress and egress to mean he can use the
property "to cross from my place, say, over to the guy's place across the road,
whether I'm walking, riding, riding a horse, a donkey, a bicycle, or an ATV in order to
ingress his place across the road." He knows it is not a recreational area. There is no
issue for the Court to resolve.

VII. No Evidence to Support "N/A"


 Finally, the Coales contend there is no evidence to support the jury's finding of
"N/A" for the geographical location of the passageway. The geographical location of
the roadway was not in dispute. The survey admitted into evidence clearly depicted
the 3.629 acre tract. Accordingly, the jury's response to part (b) of the special issue
was appropriate given the evidence admitted. Moreover, based on the record before
us, we cannot conclude that the jury's finding probably caused the rendition of an
improper judgment. See Tex. R. App. P. 44.1. 

VIII. Conclusion


 We overrule all of appellants' issues and affirm the judgment of the trial court.

 

 

 __________________________ 

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 28th day of August, 2007.